UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

CHRISTOPHER R. SHANAFELT,

    Plaintiff,

v.                                                                          Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,        Case No. 1:18-cv-00583

    Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.

The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff challenges one aspect of that decision: the step three determination that Plaintiff's impairments did not meet or medically equal Listing 4.02, Chronic Heart Failure. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and*

*Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making a decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff filed his application for Social Security Disability Insurance Benefits (DIB) on February 11, 2015, alleging disability as of April 1, 2010, because of heart failure, peripheral artery disease, neuropathy, and depression. His date last insured for DIB was September 30, 2015. The state agency denied his application on June 23, 2015. Administrative Law Judge (ALJ) William Spalo held a hearing on May 12, 2017. ALJ Spalo denied the claim on June 7, 2017. The Appeals Council denied review on March 21, 2018. Plaintiff initiated this civil action for judicial review on May 23, 2018.

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ followed the Commissioner's five-step sequential evaluation process. At step one, the ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2015, and that Plaintiff did not engage in substantial gainful activity during the period from the alleged onset date of April 1, 2010 through September 30, 2015. (PageID.51-65.) At step two, the ALJ found that Plaintiff had the following severe impairments: congestive heart failure, coronary artery disease, ischemic heart disease, diabetes mellitus, peripheral neuropathy, peripheral artery disease, obesity, degenerative disc disease of the lumbar spine, limited vision in the right eye, depression, and anxiety. (PageID.53.) Those medically determinable impairments significantly limit the ability to perform basic work activities.

At step three, the ALJ determined that, through the last insured date, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of

one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (PageID.54.) This finding was based on the ALJ's analysis that the medical evidence did not document listing-level severity, and no acceptable medical source had mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. (PageID.54-55.) At step three, the claimant bears the burden to establish that his impairments meet a listed impairment. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Moreover, all of the criteria must be met concurrently for a period of twelve continuous months. *See McKeel v. Comm'r of Soc. Sec.*, No. 14-cv-12815, 2015 WL 3932546, *8 (E.D. Mich. June 26, 2015) (citing 20 C.F.R. § 404.1525(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D ("[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation")).

With respect to Plaintiff's residual functional capacity, the ALJ determined that through the date last insured, Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 CFR § 404.1567(a). (PageID.55-56.) Although the ALJ noted that Plaintiff suffers from medically determinable impairments that could reasonably be expected to produce the symptoms Plaintiff claims he suffers from, he also found that "the claimant's statements

5

concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…." (PageID.57.) The ALJ found that the medical evidence did not support any greater limitation to the claimant's work-related abilities than that set out in the ALJ's assessment of residual functional capacity. The ALJ found that the Plaintiff's cardiac impairments, diabetes, peripheral neuropathy, back impairment, obesity and associated symptoms were accommodated by limiting him to work at the sedentary exertional level with certain additional limitations. (PageID.60.) The medical evidence indicated that the claimant was capable of performing work within those limitations. (PageID.60.) Likewise, the ALJ found, although the medical evidence indicated that Plaintiff had depressive disorder and adjustment disorder with mixed anxiety and depression, it did not indicate that the impairments were so severe as to prevent him from performing basic work activities. (PageID.61.)

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work (PageID.63), at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts to determine whether there exist a significant number of jobs which a particular claimant can

perform, his limitations notwithstanding. Here, the ALJ questioned a vocational expert. (PageID.64.)

The vocational expert reported that there existed approximately 275,000 jobs nationally that an individual with Plaintiff's residual functional capacity could perform, his limitations notwithstanding. This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, at step five, the ALJ concluded that Plaintiff was not entitled to disability benefits.

## Plaintiff's Appeal

On appeal to this Court, Plaintiff Shanafelt argues that the ALJ erred at step three in determining that he did not have an impairment that meets or medically equals Listing 4.02 (Chronic Heart Failure), arguing that substantial evidence does not support the Commissioner's decision. (PageID.1724.) He also argues that the ALJ provided insufficient analysis to support this finding. (PageID.1727-28.) If his medical evidence indicated that he met or equaled that listed impairment, then Plaintiff would be found disabled without further consideration of age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iii).

Plaintiff Shanafelt argues that his condition meets or medically equals Listing 4.02 because there is documented evidence that his left ventricle ejection fraction (LVEF) is at or below 30%, there is evidence of serious limitations in his ability to initiate, sustain, or complete activities of daily living, and an exercise test would present a significant risk. (PageID.1728-29.)

The Sixth Circuit has held that an ALJ commits reversible error by failing to analyze the claimant's physical condition in relation to the Listed Impairment. *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 415–16 (6th Cir. 2011). In *Reynolds,* the court summarized the manner

7

in which an ALJ should analyze a physical condition under the listed impairments: "In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* at 416 (citing *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 120 (3d Cir. 2000); *Senne v. Apfel,* 198 F.3d 1065, 1067 (8th Cir. 1999); *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996)); *see also M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846 (E.D. Mich. 2012).

In *Forrest v. Commissioner,* 591 F. App'x 359, 364-66 (6th Cir. 2014), the Sixth Circuit held that the analysis required at step three is less onerous than that required to establish "good reasons" under 20 C.F.R. § 404.1527(d) for rejecting a treating physician's opinion. The court declined to extend the holding in *Wilson v. Commissioner,* 378 F.3d 541, 544–48 (6th Cir. 2004) ("circumscribed form of harmless error review"), to step three. 591 F. App'x at 365. *Forrest* held that, where the comparison of the medical findings to any Listed Impairment is sparse, the Court can consider the ALJ's entire decision in determining whether substantial evidence supports the step three finding. 591 F. App'x at 366; *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *Bradford v. Sec'y of Dept. of Health and Human Servs.*, 803 F.2d 871, 873 (6th Cir. 1986).

Here, the ALJ stated:

The severity of claimant's physical impairments, considered singly and in combination, did not meet or medically equal the criteria of any listed impairment. In making this determination, I note that the claimant does not allege that his impairments meet or equal a listing. In addition, I have reviewed each of the relevant listings, including…listing 4.02…. The evidence does not document listing-level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.

(PageID.54.) The ALJ then went on to consider the impact of Plaintiff's obesity on each of his impairments and stated that there was no evidence that Plaintiff's obesity in combination with his other impairments met or equaled any listing. (*Id.*)

The Commissioner argues that the decision should be upheld because the ALJ's opinion sufficiently set out his reasoning, because the ALJ's reasoning can be inferred from other factual findings, and because the medical evidence does not indicate that Plaintiff's heart condition meets Listing 4.02. Plaintiff argues that this sparse analysis precludes judicial review and requests reversal or a remand (PageID.1730-31), citing *Reynolds* and *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846 (E.D. Mich. 2012). *M.G.* is not apt. There, the ALJ did not even identify the listing he or she had considered. *Id.* at 858.

This case more closely resembles *Forrest* than *Reynolds*. In *Forrest*, the Sixth Circuit noted that a factor in finding that the ALJ's error was harmless was that "Forrest did not argue before the ALJ that his impairments met or medically equaled in severity a specific listing." *Forrest,* 424 F. App'x at 364-65. The claimant has the burden at step three and therefore has a far less compelling claim where he presents no argument to the ALJ that he met or equaled the requirements of specific listings, then argues on appeal, with the benefit of hindsight, that the ALJ's opinion did not include a sufficiently detailed discussion of the most "closely analogous" listed impairments. *See Morris v. Barnhardt,* 223 F. App'x 465, 469 (6th Cir.2007); *see also* 20 C.F.R. § 404.1526(b); *Oldenkamp v. Comm'r of Soc. Sec.*, No. 1:13-cv-1303, 2015 WL 505805, at *5 n.2 (W.D. Mich. Feb. 6, 2015). In contrast to *Reynolds*, the claim of error at step three was not preserved here.

While the initial reasoning assesses several Listed Impairments in short form, the balance of the ALJ opinion demonstrates that the ALJ had considered the evidence regarding Plaintiff's cardiac condition (PageID.57-58):

- Plaintiff had received treatment for cardiac disease prior to the relevant period, including a stent placement. (PageID.473-630, 636-708, 711-748.)
- In October 2010, Plaintiff visited a cardiac specialist and did not report any complaints of effort-induced angina. (PageID.707.)
- At a doctor visit in October 2011, the claimant again denied effort-induced angina. (PageID.474.)
- Plaintiff was hospitalized for several days in January 2012 for a myocardial infarction and subsequent coronary angioplasty with stent placement. On discharge, Plaintiff denied chest discomfort and was experiencing mild dyspnea with exertion and sinus tachycardia. (PageID.498-500.)
- In February 2012, Plaintiff denied angina, orthopnea, and paroxysmal nocturnal dyspnea. (PageID.667.)
- In June 2012, Plaintiff denied chest pain, orthopnea, and dyspnea, and on examination, his heart rhythm was normal, and his ejection fraction was 45%. (PageID.658, 660-661.)
- In September 2013, Plaintiff reported chest discomfort and shortness of breath with activity, but his doctor found that his symptoms did not indicate angina. (PageID.642-643.)
- In March 2014, Plaintiff's ejection fraction was at 19%, which indicated an infarct. (PageID.742.)
- In March 2014, Plaintiff was prescribed medication for shortness of breath. (PageID.740.)
- In October 2014, Plaintiff was having edema, and his medication was changed. (PageID.730.)
- In January 2015, Plaintiff was hospitalized for five days for congestive heart failure. On admission, Plaintiff had significant edema in his bilateral lower extremities and reported increased dyspnea on exertion, but during his hospitalization his edema improved. Plaintiff's chest x-ray revealed an enlarged heart and his ejection fraction was 20%, but his lower extremity venous duplex showed no evidence of thrombosis. (PageID.722, 725, 923, 927, 943.)
- At an outpatient visit in January 2015, Plaintiff reported less shortness of breath and no angina or orthopnea. (PageID.718.)
- In April 2015, Plaintiff's primary care physician stated that his congestive heart failure was stable. (PageID.1091.)
- Plaintiff presented to the heart failure clinic in April 2015 and reported cardiac rehabilitation was going well. Plaintiff also denied any angina-quality chest pain and had no significant dyspnea on exertion. Plaintiff had mild edema in his lower extremities and the dosage on one of his medications was increased. (PageID.1655, 1657.)
- In May 2015, Plaintiff's medications were adjusted. (PageID.1650.)

- In May 2015, an echocardiogram showed reduced left ventricular systolic function, and Plaintiff's ejection fraction was 30-35%. (PageID.1645.)
- In July 2015, Plaintiff presented to the heart failure clinic complaining of intermittent lightheadedness and dyspnea, but no significant problems if he paced himself. On examination, Plaintiff's heart rhythm was regular, and as treatment, his dosage of Toprol was increased and possible surgery was discussed. (PageID.1156, 1159.)
- In September 2015, Plaintiff had a cardiac catheterization, which showed total occlusion of the right coronary artery, reduced left ventricular function, pulmonary hypertension, and indicated an ejection fraction of 20%. (PageID.1621.)
- At a follow-up visit to the cardiologist in September 2015, Plaintiff reported that he was not experiencing any shortness of breath or lower extremity edema. Plaintiff was told to return in six months and no changes were made to his medication. (PageID.1618-1619.)
- In September 2015, Plaintiff's primary care physician reported that his chest pain and shortness of breath were resolved with rest. (PageID.1185.)

That is a substantial discussion of Plaintiff's medical condition from which the Court can review the ALJ's decision, particularly where, as here, Plaintiff did not allege before the ALJ that his impairments met or equaled a listing.

To meet Listing 4.02, Plaintiff must show that he has congestive heart failure on a regimen of prescribed treatment with symptoms and signs described in 4.00D2 (including easy fatigue, weakness, shortness of breath, cough or chest discomfort, orthopnea, paroxysmal nocturnal dyspnea, palpitations, lightheadedness, or fainting). He must also show that he meets the requirements of Parts A and B. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02. To meet Part A(1), Plaintiff must establish through medical documentation the presence of systolic failure with an ejection fraction of 30% or less during periods of stability (not during an acute heart failure) or diastolic failure (which Plaintiff does not appear to argue here). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02A(1).

To meet Part B, Plaintiff must show that his systolic failure met one of three criteria. Under section (B)(1), Plaintiff must show:

> Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom [a medical consultant], preferably one experienced in the

care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02B(1). Alternatively, under B(2), Plaintiff must show three or more separate episodes of acute congestive heart failure within a consecutive 12-month period requiring, among other things, hospitalization or emergency room treatment for 12 hours or more. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02B(2). Under B(3), Plaintiff would have to demonstrate the inability to perform an exercise tolerance test at a workload equivalent to five METs or less for specified reasons. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02B(3).

As to Part A, the ALJ found that Plaintiff's ejection fraction was 45% in June 2012 (PageID.57, 658); and between 30-35% in May 2015 (PageID.58, 1645). These results do not meet the level the listing required to demonstrate systolic failure. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02A(1). The ALJ also noted that Plaintiff had ejection fractions of 19% in March 2014 and 20% in January 2015 (PageID.57-58, 722, 742). However, those results were not obtained during periods of stability, as Plaintiff's March 2014 testing indicated infarct (PageID.57, 722), and he was hospitalized from January 2-7, 2015, for congestive heart failure exacerbation (PageID.58, 751). The Commissioner also acknowledges that Plaintiff had an ejection fraction of 25-30% in January 2012 (PageID.499), but that testing was conducted while he was hospitalized following a myocardial infarction (PageID.498). The ALJ additionally noted that Plaintiff's ejection fraction in September 2015 was 20% (PageID.58, 1621), and that result does not appear to be tied to any period of exacerbation. However, Plaintiff must show that the criteria of the listing existed for a continuous 12-month period, and a single ejection fraction fails to establish the requisite deficits. *McKeel*, 2015 WL 3932546, at *8 ("Moreover, all of the criteria must be met concurrently for a period of twelve continuous months.") (citing 20 C.F.R. § 404.1525(c)(3), (4)).

As such, any error in setting out a fulsome analysis is harmless because Plaintiff has not shown that his impairment met or medically equaled in severity any listed impairment. Plaintiff cites *Reynolds*, but in that case the Sixth Circuit held that an ALJ erred by providing no reasons to support his finding that a specific listing was not met *and* held that the error was not harmless because it was possible the claimant had put forward sufficient evidence to meet the listing. 424 F. App'x at 416.

Although not necessary to the outcome here, Plaintiff also has not demonstrated that the ALJ did not have a substantial basis for determining he did not meet or equal the B criteria of the listing. Plaintiff's condition plainly does not meet the standard for Part B(2), as he did not have three or more separate episodes of acute congestive heart failure within a consecutive 12-month period. As to Part B(3), he notes that he had a chemically-induced stress test, but provides no evidence documenting the reason for its necessity. (PageID.1727.)

Thus, Plaintiff's argument focuses on Part B(1), namely that he was seriously limited in his ability to independently initiate, sustain, or complete activities of daily living. As the ALJ indicated, Plaintiff reported that he was generally independent with his personal care, he could do laundry, and he went shopping (PageID.55, 61, 360, 387, 428, 1152). While Plaintiff cites several pieces of evidence that suggest serious limitations in daily functioning (PageID.1728), he largely relies on his hearing testimony (PageID.139-143, 153-158) and statements in his Function Report (PageID.387-392). The ALJ found that Plaintiff's subjective complaints "concerning the intensity, persistence and limiting effect of [his] symptoms [were] not entirely consistent with the medical evidence or other evidence in the record." (PageID.57.) Plaintiff does not challenge that finding. *Hollon ex. rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477,

491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.").

Plaintiff also notes that there is "a legion of evidence of associated symptoms" of heart disease, including fatigue, cramping, peripheral neuropathy, shortness of breath, rapid weight gain, chest pain, and lightheadedness and his stress tests had to be chemically induced. (PageID.1729.) While there is evidence of all of those symptoms, the test is whether Plaintiff was seriously limited in his ability to independently initiate, sustain, or complete activities of daily living. Based on the record, including the credibility determination, the Court cannot conclude that the ALJ did not have substantial evidence to support the finding that Plaintiff did not meet the criteria for listing 4.02B.

The Court has not considered evidence Plaintiff cites for this proposition that was submitted to the Appeals Council, rather than to the ALJ. (PageID.1729 (citing PageID.81-83, PageID.37).) Although that evidence could support Plaintiff's request for a Sentence Six remand (on a showing that the evidence was new and material), which Plaintiff does not request, "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster*, 279 F.3d at 357 (internal citation omitted). Moreover, because there is substantial evidence that Plaintiff does not meet the criteria for listing 4.02A, any error in the ALJ's statement of opinion is harmless, and remand is not necessary.

## **CONCLUSION**

For these reasons, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed.** A judgment consistent with this opinion will enter.


Dated: January 14, 2020 /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge